STATE of Iowa, Appellee,

v.

Elroy SIMS, Appellant.

No. 57952.

Supreme Court of Iowa.

March 17, 1976.

W. H. Gilliam, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Michael W. Coriden, Asst. Atty. Gen., and David Dutton, County Atty., for appellee.

Heard by MOORE, C. J., and UHLENHOPP, REYNOLDSON, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

Defendant appeals his conviction and sentence for murder in the first degree in violation of §§ 690.1–690.2, The Code. He also appeals from denial of postconviction relief. We affirm on both appeals.

As a result of his postconviction action, defendant was granted a delayed appeal. In that appeal, defendant contends the jury's verdict is not supported by sufficient evidence. In his separate appeal from denial of postconviction relief, defendant contends the postconviction court erred in denying him a new trial based on newly discovered evidence and suppression of exculpatory evidence by the State at his trial.

■ I. *Sufficiency of evidence.* In evaluating the sufficiency of evidence for jury consideration, we view it in its light most favorable to the verdict. When circumstantial evidence is involved, the issue is whether the evidence was sufficient for the jury to find those circumstances were entirely consistent with defendant's guilt and inconsistent with any rational hypothesis of innocence. *State v. Schultz*, 231 N.W.2d 585, 588 (Iowa 1975). We review the evidence in this case with those principles in mind.

November 29, 1970, was a Saturday. Defendant, who was employed in Waverly, was in his Waterloo home that afternoon. He resided there with Irene Smallwood. Defendant and Smallwood lived as man and wife although each had a subsisting prior marriage.

At about 2:00 p. m. defendant drove Smallwood to her job at a Waterloo motel. He returned home by 3:00 p. m. and began to watch TV and drink beer. He testified he consumed five 12 ounce cans of beer by 6:00 p. m., when he went out and bought six more cans of beer, which he finished by 8:00 p. m. Then he said he went out and purchased six sixteen ounce cans of beer, which he testified he consumed by 9:45 p. m., when he left home to pick Smallwood up at her job.

After he picked her up, they went to a tavern where defendant testified he had two more cans of beer. They left the tavern about 10:30 p. m. and started home in defendant's pickup truck. On the way, he stopped the truck and alighted from it. The truck rolled into a ditch alongside the road and became stuck. William Hutchison happened by on his way back to a party that he had left earlier. He used his car to attempt to get defendant's truck out of the ditch but became stuck himself. A third driver came along and pulled defendant's truck from the ditch. Then defendant used his truck to pull the Hutchison vehicle from the ditch. Hutchison's car wouldn't start, and he accompanied defendant and Smallwood to defendant's home. It was then after midnight.

When they arrived at defendant's home, defendant and Hutchison began to drink beer in the living room. Although Smallwood was present, she did not drink. Hutchison testified that he and defendant engaged in small talk, consumed about two cans of beer, and defendant "mentioned that there was other girls available". According to Hutchison, Smallwood then said, "Well, I can go somewhere, too," and went down a hallway from the living room to a bedroom. When she returned from the bedroom about five minutes later, she had changed from her waitress uniform to slacks and a blouse. She said she was leaving.

Hutchison testified defendant then drew a pistol from inside his coat, waved it toward Smallwood, "and said she wouldn't leave". Smallwood returned to the bedroom. After a few seconds, defendant arose from his chair and started down the

hallway. About one minute later Hutchison heard the sound of a single gunshot. Then Hutchison heard defendant say, "Did I shoot you?" After that defendant walked back through the living room, without saying anything, and left the home.

Hutchison went to the bedroom where he found Smallwood lying on her back near the bedroom door, unconscious and bleeding from a chest wound. She was fully clothed and had a coat on. He moved her to get a telephone which was beneath her. He called the police. He administered mouth-to-mouth resuscitation to Smallwood, but she did not regain consciousness and later died.

When the police arrived they took Hutchison into custody on a charge of intoxication.

Meanwhile, defendant had driven east out of Waterloo on highway 20. His truck ran out of gas east of the town of Raymond near the Bagby residence shortly after 3:00 a. m. Mrs. Bagby gave him a can of what defendant thought was gas. When he put it in his truck it wouldn't start. It turned out that it was diesel fuel. The Bagbys, who had not previously known defendant, visited with him over beer and pizza. At about 5:00 a. m. police officers appeared at the Bagby home and arrested defendant.

Defendant was taken to the Waterloo police station. At about 7:15 a. m., Jerry Johnson, an identification officer with the police department, overheard defendant during a telephone call made by defendant to his brother in Rockford, Illinois. He testified he heard defendant say he walked into the hallway, shot into the bedroom and hit Smallwood, "she kept saying, 'Elroy you shot me through the heart,'" "I just meant to scare her, I didn't mean to hit her," and "I'm in trouble, I shot my Irene."

Defendant later gave a statement to the police. In that statement he verified many of the details of Hutchison's testimony. He said he and Smallwood were "mad at each other" at the time he walked to the bedroom with the pistol in hand and he "had a few beers on [his] chest". He said the bedroom door was open a couple of inches. He believed Smallwood was getting ready for bed. He said he stumbled as he walked down the hallway, his right arm struck his body, and the pistol went off. He then heard Smallwood say, "Oh, Elroy, you done shot me through the heart." He then "broke the door open", entering the bedroom in time to see Smallwood slump to the floor. He described the shooting as accidental. He said he was overcome with emotion and left the home. At the time his pickup truck ran out of gas, he was on his way to his brother's home in Illinois.

Police reached the Sims home about 3:00 a. m. Their investigation revealed the bullet which struck Smallwood went through the bedroom door from a height of about four feet above the floor. Smallwood was about five feet four inches tall. The medical examiner said the bullet entered the left side of Smallwood's chest, passed through her heart and also struck the aorta, causing her death.

At trial, in addition to maintaining the shooting was accidental, defendant relied on evidence of intoxication. The results of blood tests administered to Hutchison and defendant were admitted by stipulation. A specimen taken from Hutchison at 4:30 a. m. showed 146 milligrams of alcohol per 100 milliliters of blood. A specimen taken from defendant at 6:50 a. m. showed 246 milligrams of alcohol per 100 milliliters of blood. The medical examiner said a person with 100 milligrams of alcohol per 100 milliliters of blood would be intoxicated.

The trial court instructed the jury on the defense of voluntary intoxication in accordance with the principles discussed in *State v. Hall*, 214 N.W.2d 205 (Iowa 1974). The jury found defendant guilty of murder in the first degree.

Defendant's assignment of error is almost identical to that advanced in the *Hall* case. He contends the verdict of the jury was not supported by the evidence, "was arrived at through inferences and presumptions and

shows the bias, prejudice, and malice of the members of the jury toward the defendant and the jury's failure to give consideration to all the evidence presented."

The answer to this contention is the same here as it was in *Hall.* See 214 N.W.2d at 210–211. To the extent defendant is asserting the evidence was insufficient to generate a jury issue his assertion cannot be sustained. Issues of credibility were for the jury. Substantial circumstantial evidence existed that defendant willfully, deliberately and premeditatedly fired his pistol through the bedroom door at Irene Smallwood. It was for the jury to say whether this evidence was sufficient to convict defendant of first-degree murder.

■ Moreover, to the extent defendant is asserting the jury was simply wrong in its findings on the evidence, his remedy was in his motion for new trial alleging the verdict was contrary to the evidence or he was denied a fair trial. The trial court overruled his motion for new trial. As in *Hall,* from our review of the evidence we cannot say the court abused its discretion in doing so.

■ We find no merit in defendant's challenge to the sufficiency of evidence.

II. *Newly discovered evidence.* In his postconviction action, defendant offered the testimony of Bruce Carpenter, a man who roomed with witness William Hutchison at the time of the homicide and who later met and befriended defendant in jail. The case had then been tried, but it is unclear whether defendant had yet been sentenced.

Carpenter testified Hutchison told him he and defendant had both been drinking heavily at the time of the shooting. He also said Hutchison told him the gun accidently discharged when defendant stumbled in the hallway. At trial Hutchison testified defendant showed the effects of drinking, but he would not say defendant was intoxicated. He had testified he did not see defendant after he left the living room with the gun and did not know how the shooting occurred.

Defendant contends the evidence from Carpenter is newly discovered evidence entitling him to a new trial. The postconviction court, Judge Van Metre, rejected this contention, finding defendant failed to show the evidence would probably change the result if a new trial were granted.

Grounds for postconviction relief include the situation where "[t]here exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice," § 663A.2(4), The Code. This ground is similar to the ground for new trial based on newly discovered evidence recognized under § 787.3(8), The Code. We have not previously been required to decide whether claims for relief based on newly discovered evidence under these statutory provisions are subject to the same standard.

■ In *State v. Farley,* 226 N.W.2d 1, 3 (Iowa 1975), we listed the elements which must be established to sustain a motion for new trial under § 787.3(8) based on newly discovered evidence. The defendant must show (1) the evidence was discovered after trial and before judgment, (2) it could not have been discovered earlier in the exercise of due diligence, (3) it is material to the issue, not merely cumulative or impeaching, and (4) it would probably change the result if a new trial is granted. Only the part of the first element requiring discovery of the evidence "before judgment" seems inconsistent with the postconviction situation. That requirement is uniquely related to a motion for new trial since such motion must be made before judgment. § 787.2, The Code.

■ Because postconviction relief is available only after judgment of conviction or sentence and neither affects nor replaces any remedy incident to proceedings in the trial court, we hold the requirement that newly discovered evidence be discovered "before judgment" has no application in the postconviction situation. § 663A.2, The Code. Instead, the postconviction applicant

must show the evidence was discovered after judgment. He may not rely on evidence discovered after trial but before judgment unless he establishes an excuse for not having raised the issue in a motion for new trial. *Rinehart v. State*, 234 N.W.2d 649, 656–657 (Iowa 1975).

■ We hold the other three elements which must be established by a defendant in support of a motion for new trial based on newly discovered evidence must be shown in support of a postconviction application on the same ground. These three elements all relate to the sufficiency of the showing of newly discovered evidence. It is obvious the legislature intended the sufficiency of the showing necessary to obtain a new trial based on newly discovered evidence to be the same whether the ground is raised in a motion for new trial or in a postconviction application.

Support for this holding exists in the background of the postconviction statute. Our postconviction statute is a codification of the Second Revised Uniform Postconviction Act. *State v. Mulqueen*, 188 N.W.2d 360, 363 (Iowa 1971). The scope of remedy afforded under the uniform act is intended to be similar to that available under the federal postconviction statute, 28 U.S.C § 2255. Handbook of the National Conference of Commissioners on Uniform State Laws, Comment, at 271 (1966). Under the federal statute, an applicant for postconviction relief alleging entitlement to new trial based on newly discovered evidence must meet the same standard as is applicable when the ground is urged in a motion for new trial. In the federal system, a motion for new trial based on the ground of newly discovered evidence may be made before or within two years after final judgment. Rule 33, Federal Rules of Criminal Procedure. The elements which must be proved are the same as in a motion for new trial under our practice except that the defendant need not show the evidence was discovered before judgment. *Everitt v. United States*, 353 F.2d 532 (5 Cir. 1965); *Clark v. United States*, 370 F.Supp. 92 (W.D.Pa.

1974), affirmed, 506 F.2d 1050 (3 Cir. 1974); *Tropiano v. United States*, 323 F.Supp. 964 (D.Conn.1971); *Hayes v. United States*, 208 F.Supp. 178 (E.D.N.C.1962).

■ Here it does not appear defendant discovered Carpenter's evidence until after judgment. The first element of this ground for postconviction relief has thus been satisfied. However, whatever the situation regarding the elements of due diligence and probable effect on the result upon retrial, defendant failed to show this evidence is other than cumulative or impeaching. This failure is sufficient in itself to defeat his application for relief on the ground of newly discovered evidence.

The postconviction court did not err in denying relief on this ground.

III. *Suppression of exculpatory evidence.* Defendant also showed in the postconviction hearing that police officer Jerry Johnson had made a note in his investigative report that at the time defendant talked to his brother by telephone at the police station on the morning after the shooting he appeared to be quite intoxicated. Defendant contends the State wrongfully suppressed this evidence.

Johnson was not interrogated by either side about defendant's alleged intoxication. He testified at trial that he was relying on a written report which included his observations of defendant. Defense counsel did not ask to see his report. Error is predicated solely upon the failure of the prosecution to make affirmative disclosure of the fact Johnson's report showed he believed defendant was quite intoxicated when he observed him at the police station the morning after the shooting.

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held due process is violated when the prosecution suppresses exculpatory evidence material to guilt or punishment, irrespective of the prosecutor's good or bad faith. In *Moore v. Illinois*, 408 U.S. 786, 794–795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706, 713 (1972), the Court said, "The heart of the

holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence."

No request was made in the present case. Courts have held failure of the defendant to make a request is not entirely determinative of the due process issue. They reason that the undisclosed evidence may be important enough that its absence prevents the defendant from having his constitutionally-guaranteed fair trial. *United States v. Hibler,* 463 F.2d 455, 459 (9 Cir. 1972); *Barbee v. Warden, Maryland Penitentiary,* 331 F.2d 842, 846 (4 Cir. 1964); *Arline v. State,* 294 N.E.2d 840, 843 (Ind.App.1973); *State v. Kelley,* 216 Kan. 31, 531 P.2d 60, 63–64 (1975). But see *People v. Leonard,* 18 Ill. App.3d 527, 531, 310 N.E.2d 15, 18 (1974); *Hopkins v. State,* 19 Md.App. 414, 428, 311 A.2d 483, 491 (1973); *Dumer v. State,* 64 Wis.2d 590, 604–607, 219 N.W.2d 592, 601–602 (1974).

We need not decide in this case whether a request is always necessary. Whichever rule is applied here, the result must be the same. The overwhelming weight of evidence showed defendant had been drinking heavily the night of the shooting and had been affected by what he drank. Witnesses differed on whether this showed defendant was intoxicated. For example, Hutchison explained his testimony that defendant was not "completely intoxicated" by saying, "Well, he was still moving." Mrs. Bagby testified defendant acted tired and had bloodshot eyes. She said she told him perhaps they should not be drinking so much beer because he was going to be driving. She said he did not act intoxicated. She explained this testimony by saying that when her husband became intoxicated he would spill his drink, drop a cigarette or pass out.

Defendant himself did not directly testify he was intoxicated. He said, "I was drinking pretty well and I don't remember everything that happened." Defendant's brother testified defendant sounded quite drunk in the telephone conversation overheard by Johnson. In addition, the blood test was taken at about the same time as Johnson's observations. The result was received by stipulation. When viewed in light of the medical testimony explaining blood tests, it was strong evidence of defendant's intoxication.

█ The witnesses who testified on the subject were in general agreement regarding defendant's manifestations of the effects of drinking. Differences among them as to whether defendant was intoxicated are largely explainable by differences in their views as to what constitutes intoxication. In these circumstances, the absence of Johnson's opinion, which would depend on his view as to what constitutes intoxication, cannot be deemed important enough to have denied defendant a fair trial. The evidence which was received fairly permitted the jury to pass on defendant's intoxication defense.

The postconviction court did not err in denying relief on the ground of nondisclosure of exculpatory evidence.

AFFIRMED.