Elroy SIMS, Applicant,

v.

STATE of Iowa, Respondent.

No. 63982.

Supreme Court of Iowa.

Aug. 27, 1980.

Naomi Mercer and James Cleary, Des Moines, for applicant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and James D. Coil, Asst. Black Hawk County Atty., for respondent.

REYNOLDSON, Chief Justice.

In this appeal from adverse ruling in a second postconviction relief proceeding, Sims asserts that three different attorneys who represented him respectively at trial, in his first postconviction action, and on appeal from that ruling, were all ineffective. We affirm.

We adversely disposed of Sims' direct appeal from judgment and sentence for first-degree murder, consolidated with his first postconviction appeal, in *State v. Sims*, 239 N.W.2d 550, 556 (Iowa 1976). He then commenced a federal habeas corpus action raising, *inter alia*, the issue of his trial counsel's effectiveness. The federal district court, *Sims v. Brewer*, 439 F.Supp. 891 (S.D.Iowa 1977), ruled adversely on all contentions except the ineffective counsel claim, holding Sims had not exhausted his state remedies as to that ground. *Id.* at 895. The United States Court of Appeals for the Eighth Circuit affirmed. *Sims v. Brewer*, 567 F.2d 752, 753 (8th Cir. 1977) (per curiam). Our prior opinion and the federal district court opinion set out the relevant facts. Sims threatened with a handgun the woman with whom he was living, then fatally shot her by firing through the door of the bedroom into which she had retreated. 239 N.W.2d at 552–53. At trial petitioner defended on the ground he "had a few beers on [his] chest," *id.* at 553, explaining,

"I was in motion, some kind of a motion, as I recall. I was in some kind of motion and my arm struck my body and jerked the trigger on the pistol and it went off."

Upon apprehension after flight, Sims telephoned his brother. A policeman overheard Sims report, "I just meant to scare her, I didn't mean to hit her." *Id.*

One of several issues raised by attorney D. Quinn Martin in the first postconviction proceeding was the ineffectiveness of Sims' trial counsel, Isadore Nadler. Under section 663A.8, The Code,

Any ground finally adjudicated or not raised, or knowingly, voluntarily, and intelligently waived in . . . any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent [postconviction] application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original . . . application.

The State's resistance in the action before us alleges the issue of ineffective assistance of trial counsel was litigated and adjudicated in the prior postconviction proceeding, and the same issue was waived by the deliberate decision not to raise it in the appeal from that decision. Therefore the State argues that under the above-quoted provisions of section 663A.8, it cannot be considered now.

Sims seeks to avoid this result by affirmatively alleging in his supplemented application for postconviction relief that the issue of ineffective assistance of trial counsel was inadequately litigated in the first postconviction hearing because he was deprived of effective assistance of counsel in that proceeding, and that his appeal did not raise the issue because his appellate lawyer, William Gilliam, provided ineffective assistance when he elected not to assert the issue as grounds for reversal.

In this action trial court concluded Martin and Gilliam had represented Sims effectively in the prior hearing and appeal, and that the issue of trial counsel's effectiveness had been raised adequately in the first postconviction hearing.

I. *General principles.*

The principles applicable in this appeal have been established in several of our recent decisions.

■ When the postconviction applicant asserts constitutional violations, we make an independent evaluation of the totality of the circumstances. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980). This is the equivalent of a de novo review. *Id.; Kellogg v. State*, 288 N.W.2d 561, 563 (Iowa 1980).

■ But before the ineffective assistance of counsel claim can be raised in this proceeding, Sims must establish by a preponderance of the evidence "sufficient reason" for not raising the issue in his direct appeal and for "inadequately" raising the issue in the first postconviction proceeding, as he alleges. *See Hinkle*, 290 N.W.2d at 31; *Armento v. Baughman*, 290 N.W.2d 11, 13 (Iowa 1980); § 663A.8, The Code.

■ Ineffective assistance of appellate counsel, and of prior postconviction counsel,

would provide "sufficient reason" to permit the issue of ineffective trial counsel to be raised now. *See Hinkle*, 290 N.W.2d at 31. However, applicant is confronted with a presumption that counsel is competent, which must be overcome by applicant in order for an ineffective assistance of counsel claim to lie. *McQueen v. Swenson*, 498 F.2d 207, 216 (8th Cir.1974). Applicant must shoulder the burden of proof to establish by a preponderance of the evidence, *Kellogg*, 288 N.W.2d at 563, including an affirmative factual basis, *Cleeson v. State*, 258 N.W.2d 330, 332 (Iowa 1977), that trial counsel provided ineffective assistance.

Thus we proceed to a de novo type review of the effectiveness of the two lawyers.

II. *Effective assistance of counsel on first application for postconviction relief.*

Sims asserts the matter of ineffective assistance of trial counsel "was not thoroughly examined" at his first postconviction hearing. His brief asserts:

> [H]is right to a fair hearing on the issue of ineffective assistance of trial counsel was denied by Mr. Martin's failure to demonstrate to the court wherein trial counsel's defense was so inadequate and ineffective so as to deny him a fair trial. Counsel was ineffective at the first postconviction relief hearing because he neglected adequately to demonstrate that a farce and mockery of justice had occurred at the trial.

Specifically, Sims alleges Martin was ineffective because he did not question Nadler concerning (1) Nadler's failure to call witnesses who could have testified concerning Sims' drinking habits, (2) his failure to call a psychiatrist or expert on alcoholism to testify regarding petitioner's alleged inability to form the requisite intent, (3) his failure to move to suppress a statement petitioner made to the police, and (4) his decision to rely upon police reports of physical evidence rather than to call his own ballistics expert. Sims further argues Martin should have called lawyer-witnesses to show what Nadler should have done.

We are confronted with a threshold problem in considering these assertions. Apparently the full transcript of the first postconviction hearing was never offered as evidence in this proceeding, although the record indicates that transcript was before the trial court.

■ The transcript of the current proceeding shows Sims called an attorney-witness who testified that in his opinion counsel's failure to investigate certain areas or to offer certain evidence would amount to ineffective assistance of *trial* counsel. He also testified that attorney Martin had the reputation of being a good attorney who prepared his cases thoroughly. Little or no evidence was offered on the issue of what constitutes ineffective assistance at a postconviction hearing, or whether *Martin* rendered ineffective services. He may have thought Nadler made strategic choices in presenting Sims' defense; Martin himself may thus have made a strategic decision not to raise the adequacy of Nadler's representation. *See Kellogg*, 288 N.W.2d at 564–65; *State v. Cooper*, 161 N.W.2d 728, 730 (Iowa 1968). Improvident trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance. *Hinkle*, 290 N.W.2d at 31; *State v. Killpack*, 276 N.W.2d 368, 372 (Iowa 1979); *Parsons v. Brewer*, 202 N.W.2d 49, 54 (Iowa 1972). This principle applies to the services of both Nadler and Martin.

In this proceeding Sims fails to demonstrate how additional investigation and trial strategy on Nadler's part would have provided more effective assistance. Thus we cannot conclude Martin was ineffective in allegedly failing to press these questions in the first proceeding.

Sims similarly fails to demonstrate how the proffered testimony of Hickle, his employment supervisor, would have affected the trial outcome. The record here reflects that Hickle would have testified Sims was an habitual drunkard. Yet the appendix discloses that during his trial Sims wanted to discharge Nadler for telling the jury he was an habitual drunkard. This insight illustrates the hazards of playing Monday

morning quarterback in these situations, and in not granting counsel the presumption that defense decisions are often based on factors which may seldom be so apparent in a cold record. As a matter of policy, if defense counsel must weigh every action on the scale of a potential subsequent ineffective counsel claim, making a self-supporting record, mingling the defense of his client with his own defensive maneuvering, in the end the client's case will suffer.

Our limited view of Nadler's and Martin's activities must be taken in light of the simple, undisputed facts in this case, disclosed in our prior opinion and in this proceeding. "Simplicity of issues . . . bear[s] on the question [of counsel's effectiveness]." *State v. Massey*, 207 N.W.2d 777, 780 (Iowa 1973) (citing *De Roche v. United States*, 337 F.2d 606, 608 (9th Cir. 1964)).

Sims acknowledged he shot his victim through the bedroom door, and that they were "mad at each other." *State v. Sims*, 239 N.W.2d at 553. There was little a trial counsel could do with those facts except to suggest his client stay off the witness stand, a course which would present its own dangers. Sims offers no rationale that might have justified employment of a ballistics expert. Nadler's direct examination of Sims apparently developed his various excuses and posthomicide remorse. Nadler introduced strong proof of Sims' intoxication and called a medical witness on the effect of that intoxication. There was no eyewitness to the shooting. The jury could have believed Sims' testimony that the gun discharged accidentally, and could have believed on this record he was too drunk to form the requisite intent for first-degree murder. The jury obviously did not believe him, and that was fatal to his case. Martin's efforts to show ineffective trial assistance necessarily were circumscribed by these facts.

■ We hold that Sims has not established Martin's ineffectiveness at the first postconviction hearing by a preponderance of the evidence.

III. *Effective assistance of counsel on appeal.*

Sims also contends he should be permitted to relitigate the question of ineffective trial counsel because he was ineffectively represented by attorney William Gilliam on his direct appeal and the consolidated appeal from the first denial of postconviction relief.

■ Of course the right to effective assistance of counsel also applies to assistance of counsel on appeal. *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493, 498 (1967); *Hinkle*, 290 N.W.2d at 31. The same standards applied to trial counsel competency should apply in measuring the competency of appellate counsel. *Hinkle*, 290 N.W.2d at 31.

One attorney-witness called by Sims in this proceeding testified it would be "customary procedure" to raise on appeal nonfrivolous issues which had been raised and protected below. However, he also testified he "certainly wouldn't say" that an attorney who does not include every possible ground for appeal was incompetent. A second attorney-witness testified similarly that whether to raise a particular ground for reversal was a "judgment call."

Sims testified he tried to avoid indicating to Gilliam which issues to appeal. He further testified he knew the issue of Nadler's effectiveness had not been raised when he received copies of the appellate briefs from Gilliam. Nonetheless, he did not protest but "just let it slide" in later telephone conversations with Gilliam because he believed it was "too late."

Gilliam testified he examined the question of ineffective trial counsel and professionally concluded trial counsel's performance did not fall below the "farce or mockery" test. Although that was the expression used in our opinions when Sims was tried, we subsequently adopted the "range of normal competency" language in *State v. Massey*, 207 N.W.2d at 780. Our opinions do not reflect any substantial distinction in our consideration of trial counsel's services under either formulation. As the federal

court observed in *McQueen v. Swenson*, 498 F.2d at 214, "It was not intended that the 'mockery of justice' standard be taken literally, but rather that it be employed as an embodiment of the principle that a petitioner must shoulder a heavy burden in proving unfairness." Thus we do not attach any significance to Gilliam's conclusion the former language applied, which conclusion was shared by Sims' counsel in this appeal. *See Ogden v. State*, 215 N.W.2d 335, 337–38 (Iowa 1974), where we used the *Massey* revised language in evaluating conduct of counsel that occurred in 1968 and 1969.

Gilliam's testimony reflects his decision not to raise the effective trial counsel issue on appeal was in part a strategic or tactical one, to avoid diluting other issues actually raised. *Cf. Hinkle*, 290 N.W.2d at 31–32 (strategic decision not to raise issue of adequacy of psychiatric examination on direct appeal did not amount to ineffective assistance of counsel on appeal); *Armento v. Baughman*, 290 N.W.2d at 16–17 (strategic decision for joint trial not beyond range of normal competency); *State v. Killpack*, 276 N.W.2d at 372 (strategic decision not to assert intoxication defense did not constitute ineffective assistance); *State v. Veverka*, 271 N.W.2d 744, 750 (Iowa 1978) (tactical decision not to request instructions on lesser included offenses did not establish ineffective assistance claim); and *State v. Rand*, 268 N.W.2d 642, 649 (Iowa 1978) (decision whether to assert particular defense, even if viable, is strategic and should not furnish grounds for reversal).

Although Sims has not raised the question directly, we conclude the section 663A.8 knowing, voluntary and intelligent waiver which prevents relitigating a ground may in most situations be made by counsel. Ordinarily, except for such basic decisions as to whether to plead guilty, waive a jury, or testify in his or her own behalf, the accused is bound by the tactical or strategic decisions made by counsel, even those rising to constitutional dimensions. *See Wainwright v. Sykes*, 433 U.S. 72, 93 n.1, 97 S.Ct. 2497, 2510 n.1, 53 L.Ed.2d 594, 612 n.1 (1977) (Burger, C. J., concurring); *Estelle v. Wil-*liams, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126, 135 (1976); *United States v. Guerra de Aguilera*, 600 F.2d 752, 753 (9th Cir.1979); *State v. LaMar*, 224 N.W.2d 252, 254 (Iowa 1974); ABA Project on Standards for Criminal Justice, *The Prosecution Function and The Defense Function* § 5.2, at 237–38 (1971). We hold Gilliam's election not to raise the ineffective trial counsel ground in the prior appeal was an effective section 663A.8 waiver, thus foreclosing the right to raise the ground again.

We further hold Sims has not carried his burden to establish by a preponderance of the evidence that Gilliam's performance as appeal counsel fell below the range of normal competency. It follows he has not established "sufficient reason" for not having raised the ineffective trial counsel ground in the prior appeal. Section 663A.8 thus denies him the right to raise the issue now. *See Hinkle*, 290 N.W.2d at 31–32; *Bledsoe v. State*, 257 N.W.2d 32, 33–34 (Iowa 1977); *Rinehart v. State*, 234 N.W.2d 649, 657 (Iowa 1975).

The judgment entered by trial court is affirmed.

AFFIRMED.