IN THE COURT OF APPEALS OF IOWA

No. 13-1985
Filed August 5, 2015

**CHARLES HENRY ARMSTRONG,**
　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　Respondent-Appellee.
_____

　　　Appeal from the Iowa District Court for Pottawattamie County, Kathleen A.

Kilnoski, Judge.

　　　Applicant appeals from the denial of his application for postconviction

relief. **AFFIRMED.**

　　　Frank E. Younes of Taylor, High & Younes, Omaha, Nebraska, for

appellant.

　　　Thomas J. Miller, Attorney General, Bridget Chambers, Assistant Attorney

General, Matthew D. Wilber, County Attorney, and Margaret Popp-Reyes,

Assistant County Attorney, for appellee State.

　　　Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DANILSON, C.J.**

Charles Armstrong appeals from the denial of his application for postconviction relief (PCR). Armstrong maintains he received ineffective assistance from trial counsel and direct appeal counsel. He contends trial counsel was ineffective for failing to impeach the credibility of a State witness and for failing to request a mistrial when the State's witness testified while inebriated. He also contends direct appeal counsel was ineffective for failing to raise a claim of newly discovered evidence. He maintains the cumulative errors of counsel have prejudiced him.

Because Armstrong's general assertions regarding trial counsel's failures do not establish that counsel failed to perform an essential duty, we find Armstrong did not receive ineffective assistance from trial counsel. Because the deposition of the State's witness, Terry Vance, taken after the conclusion of trial does not fall within the definition of newly discovered evidence and it does not satisfy the "extraordinary exception," appellate counsel did not fail to perform an essential duty, and Armstrong did not receive ineffective assistance from direct appeal counsel. We affirm.

**I. Background Facts and Proceedings.**

On August 4, 2008, Armstrong was charged by trial information with murder in the first degree.

Following a trial by jury, Armstrong was convicted of murder in the second degree. Armstrong filed several posttrial motions, including a motion to continue sentencing so trial counsel could review the posttrial deposition of Terry Vance.

All motions were denied. Armstrong was sentenced to a term of incarceration not to exceed fifty years.

Armstrong filed a direct appeal in which he maintained he received ineffective assistance of trial counsel. The supreme court transferred the case to us, and we affirmed Armstrong's conviction for second-degree murder. *See State v. Armstrong*, No. 08-2065, 2009 WL 5125916, at *3 (Iowa Ct. App. Dec. 30, 2009).

Armstrong filed an application for PCR on April 16, 2010. An evidentiary hearing was held on May 2, 2013. The district court denied Armstrong's application on November 21, 2013. Armstrong appeals.

## II. Standard of Review.

Generally an appeal from a denial of an application of PCR is reviewed for corrections of errors at law. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). However, when an applicant asserts claims of a constitutional nature, our review is de novo. *Id.* Thus, we review claims of ineffective assistance of counsel de novo. *Id.*

## III. Discussion.

### A. Claim Preclusion.

As he did on direct appeal, Armstrong maintains trial counsel was ineffective for failing to argue diminished responsibility and intoxication are defenses to second-degree murder when the charge is based upon assault as a specific-intent crime. *See Armstrong*, 2009 WL 5125916, at *2. Armstrong may not reassert a claim that was decided adversely on direct appeal. *See Jones v. Scurr*, 316 N.W.2d 905, 911 (Iowa 1982); *see also* Iowa Code § 822.8 ("Any

ground finally adjudicated . . . in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application . . . .").  As a result, this claim is meritless.

**B. Ineffective Assistance of Counsel: Trial Counsel.**

To prevail on a claim of ineffective assistance of counsel, Armstrong must prove by a preponderance of the evidence (1) the attorney failed to perform an essential duty and (2) prejudice resulted from the failure.  *See State v. Rodriguez,* 804 N.W.2d 844, 848 (Iowa 2011).  To prove counsel failed to perform an essential duty, he must show "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms."  *See Strickland v. Washington*, 466 U.S. 668, 688 (1984).  Amstrong must overcome a strong presumption of counsel's competence.  *See id.* at 689.  To establish prejudice, he must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "The likelihood of a different result must be substantial, not just conceivable."  *State v. Ambrose*, 861 N.W.2d 550, 557 (Iowa 2015).  We "will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy, even if such judgments ultimately fail."  *Brewer v. State*, 444 N.W.2d 77, 83 (Iowa 1989).  "A defendant is not entitled to perfect representation, rather representation which is within the normal range of competency."  *State v. Artzer,* 609 N.W.2d 526, 531 (Iowa 2000).  The same standards of effectiveness that apply to trial counsel also apply to appellate counsel.  *Sims v. State*, 295 N.W.2d 420, 424 (Iowa 1980).  The claim fails if

either element is lacking. *See Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010).

**1. Impeach Vance's credibility as a witness.** Armstrong maintains trial counsel was ineffective for failing to impeach the credibility of the State's witness Terry Vance. He claims counsel should have more thoroughly cross-examined Vance and should have called witnesses to show Vance was untruthful in his testimony.

A review of the trial transcript shows that Armstrong's trial counsel was able to elicit responses from Vance during cross-examination that he drank often—every day if he had the money to do so—that he had been arrested for public intoxication approximately once a week or fifty times a year while he was homeless, that he usually drank alcohol until he was intoxicated, that he had been drinking the day Harriman was killed, and that he and Armstrong were known to get into fights "quite a bit." Additionally, through cross-examination of Brandy Waller, trial counsel established that Vance had a tendency to tell "tall stories" and Waller was used to having to "read between the lines when he was intoxicated." In response to a question from trial counsel, Waller also testified that Vance appeared intoxicated that night and she was able to smell alcohol on him.

In spite of Armstrong's contention otherwise, trial counsel did impeach Vance's credibility through cross-examination of both Vance and Waller. Although Armstrong makes the general assertion that counsel should have called other witnesses to impeach Vance, he does not identify any specific witnesses counsel failed to call. "When complaining about the adequacy of an attorney's

representation, it is not enough to simply claim that counsel should have done a better job." *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994). Armstrong has not established that counsel breached an essential duty.

**2. Move for mistrial because State's witness was intoxicated while testifying.** Armstrong maintains trial counsel was ineffective for failing to request a mistrial because the State's key witness, Vance, was inebriated while testifying.

At his deposition in his PCR proceeding, Armstrong testified that his sister noticed a strong odor of alcohol coming from Vance at trial, and she immediately notified trial counsel. However, this statement is the only evidence Vance was intoxicated. Nothing in the trial transcript indicates Vance had consumed alcohol before testifying. Armstrong's sister did not testify at trial or at Armstrong's PCR hearing. Additionally, a deposition of trial counsel was taken in connection with the PCR proceedings, but counsel was not asked whether he noticed any signs of possible intoxication or if Armstrong's sister had brought any concerns to his attention. Armstrong's self-serving statement is not sufficient to prove Vance was intoxicated. Armstrong has not established by a preponderance of the evidence that counsel failed to perform an essential duty by not requesting a mistrial. *See State v. Utter*, 803 N.W.2d 647, 652 (Iowa 2011) ("[T]rial counsel has no duty to pursue a meritless issue . . . .").

**C. Ineffective Assistance of Counsel: Direct Appeal Counsel.**

Armstrong also maintains he received ineffective assistance from direct appeal counsel. He maintains direct appeal counsel should have raised a claim of newly-discovered evidence that would have impeached the testimony of Vance and resulted in the granting of a new trial. Specifically, Armstrong claims

a deposition taken of Vance after the trial contained inconsistencies and detailed descriptions of Vance's issues with drugs and mental health issues.

During the posttrial deposition of Vance, he made the following statements about Armstrong's co-defendant, Mark Foster.

> A: [Foster] kicked [Harriman] multiple times, stomped on his face. Well, I can't really be honest to say that he stomped his face, but I know he kicked him multiple times.
> I think he stomped on his face a couple times, but I didn't say that before, so I shouldn't be saying it now. But he stomped on his face a couple times. That's probably what got his nose broke. I'm not for sure.
> Q: So he kicked him, and now you're testifying today that he stomped on him? A: Yeah. I'm going to drop out that stomping part because I didn't—this is the first time I brought that up, so I'm just going to say he kicked him. I can't say he stomped on his face. I can't say that.

Additionally, at the posttrial deposition, Vance testified for the first time that he had been diagnosed with paranoid schizophrenia in approximately 1995 and had not seen a psychiatrist since 1996. He further testified that he was not taking any medications for the diagnosis and believed he could self-medicate with alcohol. He testified he had not had problems with hallucinations "in a long time."

In order to receive a new trial based on newly discovered evidence, the claimant must establish:

> (1) the evidence was discovered after the verdict; (2) the evidence could not have been discovered earlier in the exercise of due diligence; (3) the evidence is material to the case and not merely cumulative or impeaching; and (4) the evidence probably would have changed the result of the trial.

*Grissom v. State*, 572 N.W.2d 183, 184 (Iowa 1997). "Thus, by definition, newly discovered evidence refers to evidence which existed at the time of the trial

proceeding. Acts or events occurring subsequent to trial do not generally qualify as newly discovered evidence." *Id.* (internal citations omitted).

The second deposition of Vance, taken approximately two weeks after Armstrong's trial concluded, does not fall within the definition of newly discovered evidence. The alleged inconsistent testimony given in the deposition did not occur until after trial, thus it could not have been introduced at trial. Moreover, this is not an "extraordinary case when an 'utter failure of justice will unequivocally result' if the new evidence is not considered or where it is no longer just or equitable to enforce the prior judgment." *Id*. at 185 (citing *Benson v. Richardson*, 537 N.W.2d 748, 763 (Iowa 1995)). Any inconsistencies about Foster stomping or kicking Harriman were minor—both convey that Vance witnessed Foster use his foot to inflict injury on Harriman. Additionally, Vance testified about mental health issues but clarified that he had not suffered for a long time. At trial, Vance testified he drank almost daily and had been drinking on the day in question.

Because the deposition of Vance taken after the conclusion of trial does not fall within the definition of newly discovered evidence and it does not meet the "extraordinary exception," appellate counsel had no duty to raise the claim of newly discovered evidence. *See Utter*, 803 N.W.2d at 652.

**D. Cumulative Effect.**

Armstrong maintains we should determine whether he was prejudiced by the cumulative effect of trial counsel and appellate counsel's errors. *See State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012) ("Under Iowa law, we should look to the cumulative effect of counsel's errors to determine whether the defendant satisfied

the prejudice prong of the *Strickland* test."). While we agree that consideration of cumulative prejudice is the proper analysis, because we have already concluded that none of Armstrong's allegations amounted to failure to perform an essential duty, we need not consider whether Armstrong was prejudiced. *See Kirchner v. State,* 756 N.W.2d 202, 204 (Iowa 2008) ("The court need not address both components if the [applicant] makes an insufficient showing on one of the prongs.").

**IV. Conclusion.**

Because Armstrong's general assertions regarding trial counsel's failures do not establish that counsel failed to perform an essential duty, we find Armstrong did not receive ineffective assistance from trial counsel. Because Vance's deposition taken after the conclusion of trial does not fall within the definition of newly discovered evidence and it does not satisfy the "extraordinary exception," appellate counsel did not fail to perform an essential duty, and Armstrong did not receive ineffective assistance from direct appeal counsel. We affirm.

**AFFIRMED.**