# IN THE COURT OF APPEALS OF IOWA

No. 14-1004
Filed August 19, 2015

**ROSENDO ENRIQUEZ JR.,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Muscatine County, Mark J. Smith,

Judge.

Enriquez appeals from the denial of his application for postconviction

relief. **AFFIRMED.**

Michael J. Piper of Dickey & Campbell Law Firm, P.L.C., Des Moines, for

appellant.

Thomas J. Miller, Attorney General, Heather Mapes, Assistant Attorney

General, and Alan Ostergren, County Attorney, for appellee State.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DANILSON, C.J.**

Rosendo Enriquez Jr. appeals from the denial of his application for postconviction relief (PCR). He maintains the district court wrongly denied his application because he received ineffective assistance from both trial counsel and direct appeal counsel. Specifically, he maintains counsel should have argued for a distinct standard to analyze searches and searches under the Iowa Constitution. Because we do not expect counsel to anticipate changes in the law, Enriquez has not established that either trial counsel or direct appeal counsel failed to perform an essential duty. Thus, we affirm the district court's denial of his PCR application.

**I. Background Facts and Proceedings.**

On June 30, 2008, law enforcement searched a residence shared by Enriquez and Stephanie Ryder. Ryder was on probation at the time and had agreed to submit to searches of her person, property, place of residence, vehicle, and personal effects. Ryder's probation officer, accompanied by police officers, went to the residence to investigate suspicions of possible drug activity and firearms in the home.

When the officers arrived, Enriquez was in the shower. Ryder informed him of the officers' presence, and Enriquez stepped out of the bathroom wearing a towel. He asked to get dressed in the bedroom. One of the officers agreed but stated he would have to accompany Enriquez for the officers' safety. The officer positioned himself at the door of the bedroom and watched through the slight opening. The officer noted that Enriquez reached into the closet at mid-level with both hands and "fumbled" or "messed with" something. Enriquez did not remove

anything from the closet. He then retrieved clothing from the bed and got dressed. After Enriquez exited the room, the officer went to the closet and discovered approximately twenty-one grams of methamphetamine and a small amount of cocaine. The officer also noticed a silencer on the dresser. At that point, the officers applied for a warrant. After receiving the warrant, the officers found a handgun in the bedroom closet as well as additional ammunition in a hall closet.

On July 7, 2008, Enriquez was charged with possession of a controlled substance (more than five grams of methamphetamine) with intent to deliver in possession of a firearm, drug tax stamp violation, possession of a controlled substance (cocaine), and possession of a firearm.

Enriquez filed a motion to suppress on September 24, 2008. In it, he asserted that because the search was conducted without a warrant and without his consent, it was in violation of the Fourth Amendment to the United States Constitution. Following a hearing on the motion, the district court granted Enriquez's motion to suppress. The next day, the State filed a motion to reconsider, arguing that even without the consent of Enriquez, the search was valid because it was justified by Ryder's probation agreement and the plain view doctrine. On November 7, 2008, the district court found that the officers conducted a lawful search of the home, no private area of Enriquez's was searched, and Enriquez did not object to the search. It then denied the motion to suppress.

Following a jury trial, Enriquez was convicted of each of the charges on July 22, 2009. He was sentenced to a total term of incarceration not to exceed fifty-five years.

Enriquez filed a direct appeal, and our supreme court transferred the case to us. In his direct appeal, Enriquez attacked the validity of the search as being done without his consent and inconsistent with the plain view doctrine. In *State v. Enriquez*, No. 09–1460, 2011 WL 1584114, at *4 (Iowa Ct. App. April 27, 2011), we affirmed his conviction. Enriquez sought further review from the Iowa Supreme Court, which was denied on January 20, 2012. Procedendo issued February 3, 2012.

Enriquez filed his application for PCR on May 21, 2013. He argued both trial counsel and direct appeal counsel were ineffective for failing to "assert, argue, and preserve for appeal that the search violated the Iowa Constitution" and "for failing to assert, argue, and preserve for appeal that the Iowa Constitution should be distinguished from the Federal Constitution on the search issue."[1] On May 22, 2014, the district court denied Enriquez's application. He appeals.

## II. Standard of Review.

Generally an appeal from a denial of an application for PCR is reviewed for corrections of errors at law. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). However, when an applicant asserts claims of a constitutional nature, our

---

[1] Enriquez raised other arguments as well, but he has apparently abandoned those claims on appeal.

review is de novo. *Id.* Thus, we review claims of ineffective assistance of counsel de novo. *Id.*

**III. Discussion.**

Enriquez maintains he received ineffective assistance from both trial counsel and direct appeal counsel because each failed to raise an argument "of differential treatment of searches and seizures under the Iowa Constitution."

To prevail on a claim of ineffective assistance of counsel, Enriquez must prove by a preponderance of the evidence (1) the attorney failed to perform an essential duty and (2) prejudice resulted from the failure. *See State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011). The same standards of effectiveness that apply to trial counsel also apply to appellate counsel. *Sims v. State*, 295 N.W.2d 420, 424 (Iowa 1980). The claim fails if either element is lacking. *See Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010).

Here, Enriquez has not established that either trial or direct appeal counsel failed to perform an essential duty. To craft his argument regarding the Iowa Constitution[2], Enriquez relies on our supreme court's decision *State v. Baldon*, 829 N.W.2d 785, 795 (Iowa 2013). In *Baldon*, our supreme court relied upon Article I, section 8 of the Iowa Constitution to conclude that prospective consent to search in a parole agreement "does not represent a voluntary grant of consent within our constitutional meaning." 829 N.W.2d at 803.

---

[2] We note that the first time Enriquez laid out his argument regarding the different standard that should have been applied to the Iowa Constitution was in his reply brief on appeal. "We have long held that an issue cannot be asserted for the first time in a reply brief." *Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992).

6

The *Baldon* ruling was filed over four years after Enriquez's initial motion to suppress was decided and approximately two years after his direct appeal was decided. "We do not expect counsel to anticipate changes in the law, and counsel will not be found ineffective for lack of clairvoyance." *Millam v. State*, 745 N.W.2d 719, 722 (Iowa 2008).

In *Baldon*, the court explicitly stated:

> [W]e largely set aside the cases dealing with probation agreements. These cases are of limited value in analyzing the consent issue in parole agreements because probationers often end up on probation through plea bargaining and, consequently, maintain a vastly superior bargaining power than parolees. Such a probationer has the choice of demanding a trial to seek his or her freedom, which many courts find gives rise to the type of bargaining power that renders probation agreements consensual. Thus, we primarily focus on parolee cases.

*Id.* at 795.

The court did address probationer's rights in *State v. Short*, 851 N.W.2d 474, 506 (Iowa 2014). In *Short*, law enforcement officers searched the defendant's residence. 851 N.W.2d at 477. "Although probation officials were contacted in connection with the burglary investigation, they did not participate in the search." *Id.* "It [was] undisputed that the search was not a probationary search, but was instead an investigatory search by law enforcement related to new crimes." *Id.* Ultimately, the supreme court reaffirmed its holding in *State v. Cullison*, 173 N.W.2d 533, 537 (Iowa 1970)—namely, that "the warrant requirement has full applicability to home searches of both probationers and parolees by law enforcement." *Short*, 851 N.W.2d at 506. However, the court did "not address the legality of home visits or other types of supervision by probation officers pursuant to their ordinary functions, nor" did they "address the

question of whether a probationer may validly consent to warrantless home searches." *Id.* More recently, our supreme court recognized a "special needs" exception for warrantless searches by parole officers "as authorized by a parole agreement and not refused by the parolee when done to promote the goals of parole, divorced from the goals of law enforcement, supported by reasonable suspicion based on knowledge arriving out of the supervision role . . . ." *State v. King,* ___ N.W.2d ___, ___, 2015 WL 3930051, at *18 (Iowa 2015). Again, the court explicitly did "not address the application of [the] standard to probationers . . . ." *Id.*

Here, Enriquez argues his counsel should have claimed that under the Iowa Constitution, the prospective consent to search in his co-tenant's probation agreement did not provide a valid justification for the warrantless search of the shared home. Enriquez concedes this specific issue has not yet been decided by the Iowa appellate courts.

We acknowledge the recent line of cases regarding the validity of consent searches involving parolees and probationers suggests the search of Enriquez's and Ryder's residence could not be premised upon Ryder's probation agreement where law enforcement officers join in the initial entry with the probation officer. However, even if the search could not be premised upon Ryder's probation agreement, Ryder could still voluntarily consent to the probation officer's and law enforcement officer's entry into the home, the basis upon which his direct appeal was denied. We do not believe a probationer's voluntary consent to law enforcement officers to enter into a residence is somehow vitiated by the existence of the probation agreement, nor has Enriquez provided us any

authority to the contrary. Even if the supreme court would ultimately reach such a conclusion, we decline to conclude counsel is ineffective for failing to predict changes in the law which remain unresolved and open to debate. *See Snethen v. State*, 308 N.W.2d 11, 16 (Iowa 1981) ("Counsel need not be a crystal gazer; it is not necessary to know what the law will become in the future to provide effective assistance of counsel.").

Thus, Enriquez has not established that either trial counsel or direct appeal counsel failed to perform an essential duty, and we affirm the district court's denial of his application for postconviction relief.

**AFFIRMED.**