# IN THE COURT OF APPEALS OF IOWA

No. 19-1882
Filed March 17, 2021

**MARTIN BEAULIEU,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.

An unsuccessful applicant for postconviction relief appeals the district court's dismissal of his claims without reaching the merits. **REVERSED AND REMANDED WITH DIRECTIONS.**

Peter M. Sand, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

This appeal involves the denial of postconviction relief (PCR) from two simple misdemeanor convictions. In his PCR application, Martin Beaulieu claimed his uncounseled guilty pleas were involuntary because he experienced a medical emergency at the time of the plea hearing. The district court did not reach the merits of that claim. Instead, the court ruled that Beaulieu's failure to appeal his convictions to the district court barred his PCR challenge under Iowa Code section 822.8 (2019), as interpreted in *Osborn v. State*, 573 N.W.2d 917, 920 (Iowa 1998). Because Beaulieu offered sufficient reason for not appealing in the ten days provided by Iowa Rule of Criminal Procedure 2.73 and was prejudiced by the court's error, we reverse and remand with directions.

## I.      Facts and Prior Proceedings

In December 2018, the State charged Beaulieu, a carpenter, with two simple misdemeanors: public intoxication and interference with official acts. *See* Iowa Code §§ 123.46(2), 719.1(1)(b) (2018). Before his arrest, Beaulieu had been working on a months-long project but had yet to be paid. As a result, Beaulieu was in a difficult financial situation. On December 13, Beaulieu's car ran out of gas in his customer's driveway, which led to an argument. The customer called police, who arrested Beaulieu. Beaulieu later testified that officers slammed him to the ground during the arrest and that, while in custody, he started to feel ill and experience chest pains. The police officers took Beaulieu to a nearby hospital and then to jail. Beaulieu told the arresting officer and a nurse at the jail about his symptoms but did not believe that they took his health concerns seriously.

The next morning, Beaulieu's condition worsened. He thought he was having a stroke and he "felt like [he] was going to die." At the postconviction hearing, Beaulieu testified that he was "hoping and praying to get out of jail and go to the hospital." Beaulieu believed the jail staff did not attend to his health because they thought he was "lying and faking."

That same morning, December 14, the county attorney filed two criminal complaints against Beaulieu. A few hours later, Beaulieu appeared in court and waived his right to counsel. He then pleaded guilty as charged. A district associate judge accepted his pleas and imposed a sentence of $315 in fines, plus surcharges and court costs.[1] The judgment order notified Beaulieu of his right to appeal. Beaulieu later testified that he intended to plead not guilty but believed that the only way he could get the urgent medical care he needed was to plead guilty and be released rather than returning to the jail until he managed to post bond.[2]

About an hour after entering his pleas, while being discharged from jail, Beaulieu "fell over on the floor because of chest pains." The jail called an ambulance, which took him to the hospital. There, doctors found Beaulieu was suffering from an acute pulmonary embolism. In lay terms, he had a blood clot in his lung, a life-threatening condition if left untreated.[3] Beaulieu remained hospitalized for three days. The December 17 discharge report noted that

---

[1] The plea-and-sentencing hearing was not reported.
[2] Beaulieu testified that he did not tell the plea-taking judge about his health condition but thought the jail nurse planned to pass along that information.
[3] Beaulieu testified that his doctors advised: "the clot can split up and potentially go to my brain, and then I'm done for."

Beaulieu was still suffering from chest pains, nausea from pain medication, and was "anxious" about going home.

Because Beaulieu's convictions were not indictable offenses, he only had ten days to appeal. *See* Iowa R. Crim. P. 2.73. That deadline ran on December 24—a week after his release from the hospital. Beaulieu missed the ten-day deadline and never directly appealed his convictions. Instead, he filed a PCR action five months later. After a hearing, the district court dismissed Beaulieu's PCR claim, citing Iowa Code section 822.8 (2019). The court found Beaulieu was "made aware of his right to appeal" his simple misdemeanor convictions but failed to do so. The court then reasoned that Beaulieu had not "demonstrated 'sufficient reason' for having not raised the issues now asserted in post-conviction relief on direct appeal from his criminal trial." Beaulieu appeals.

## II.     Analysis

Chapter 822 governs PCR actions. We review PCR denials for correction of legal error. *Everett v. State*, 789 N.W.2d 151, 155 (2010). The fighting issue in Beaulieu's case is section 822.8, entitled "Grounds must be all-inclusive." That statute provides:

> All grounds for relief available to an applicant under this chapter must be raised in the applicant's original, supplemental or amended application. Any ground finally adjudicated or not raised, or knowingly, voluntarily, and intelligently waived in the proceeding that resulted in the conviction or sentence, or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

Iowa Code § 822.8.

Our supreme court has interpreted this provision to prohibit an applicant from "relitigating claims that were or should have been properly presented on direct appeal." *Osborn*, 573 N.W.2d. at 921. In other words, applicants may not pursue claims for PCR that they did not raise on direct appeal unless they show 1) "sufficient reason" or "cause" for not properly raising the issue earlier and 2) resulting prejudice. *Id.*

We begin by considering whether Beaulieu has presented sufficient reason for not contesting his guilty pleas in a direct appeal. Two aspects of his case complicate that question. First, applicants most often gravitate to ineffective-assistance-of-counsel claims to excuse their failure to raise an issue in prior proceedings. *See Sims v. State*, 295 N.W.2d 420, 422–23 (Iowa 1980) (analyzing "sufficient cause" under prior postconviction statute); *see also Allison v. State*, 914 N.W.2d 866, 888 (Iowa 2018) (explaining limitation in section 822.8 "may be avoided if counsel ineffectively fails to comply"). But Beaulieu waived the right to counsel and represented himself at his plea and sentencing. If his waiver was knowing and intelligent, he is unable to allege ineffective assistance. *See State v. Hutchison,* 341 N.W.2d 33, 42 (Iowa 1983). Second, he pleaded guilty to simple misdemeanors, so his appeal process differed from defendants convicted of indictable offenses. *See* Iowa R. Cr. P. 2.73 (providing defendants ten days to appeal judgment to district court); Iowa R. App. P. 6.101(1)(b) (providing thirty days to appeal other judgments); *see also* Iowa Code § 814.6 (allowing only discretionary review to appellate courts from simple-misdemeanor convictions). We will discuss these two complications after reviewing the parties' positions.

To contest the dismissal of his action under section 822.8, Beaulieu insists "sufficient reason" under *Osborn* is "not a terribly high bar." He suggests the district court wrongly implied "any defendant who fails to file an appeal from a guilty plea gives up forever any possibility of relief in PCR."[4] He elaborates, "Every criminal defendant in Iowa is given a piece of paper at sentencing that tells them of their right to appeal." So, "if that piece of paper obviates any later claim of 'sufficient reason' for not asserting a defect in the plea in a PCR action, then there is no 'sufficient reason' exception to *Osborn*."

What is Beaulieu's explanation for not appealing his convictions? He emphasizes that "he was hospitalized for days with pulmonary embolism directly after his sentencing, and he was unable to even think clearly about what had happened with this case until after the appeal time had passed." He also notes that he was "unrepresented at the plea and sentencing."

Unmoved by his excuses, the State argues Beaulieu "had a full week after he was discharged from medical care to evidence a timely intent to appeal" but did not challenge his pleas until months later. The State claims that delay "materially disadvantaged" its position because "no record or audio recording of the plea was available" to the PCR court.[5]

---

[4] As a side note, the legislature decided in 2019 that no right to appeal exists from a final judgment on "[a] conviction where the defendant has pled guilty" unless the plea was to a class "A" felony or the defendant establishes "good cause." 2019 Iowa Acts ch. 140, § 28 (codified at Iowa Code § 814.6(1)(a) (2020)).

[5] Beaulieu contests this argument in his reply brief. Because his plea proceeding was not recorded, he asserts his failure to appeal "did not prejudice the State in this proceeding one bit."

We find Beaulieu's position more convincing. If counsel's faulty performance (which rises to the level of ineffective assistance) can constitute sufficient reason under section 822.8 (2019), so too can the medical incapacity of a self-represented defendant. The PCR record bolsters Beaulieu's claim that he was in the throes of a health crisis when he entered his guilty pleas and when he signed a waiver of this right to counsel. And also when he was handed the written notice of his right to appeal his conviction and sentence. As Beaulieu now argues: "Certainly [his] medical condition would have affected the efficacy of the notice, in addition to his mindset when entering a plea."

A similar situation arose in *State v. Boge*, 252 N.W.2d 411, 414 (Iowa 1977).[6] Reversing the dismissal of a PCR challenge to a guilty plea, the supreme court held that the district court should have allowed the PCR applicant "to prove that he was mentally incompetent at the plea hearing." *Boge*, 252 N.W.2d at 414. Boge argued his mental state prevented him from understanding the consequences of his guilty plea. *Id.* Boge was dealing with domestic and financial problems, a gunshot wound suffered during arrest, and medication, all of which contributed to his mental incapacity. *Id.* The supreme court decided Boge did not "deliberately bypass an opportunity to press his claim for relief." *Id.* at 415. Rather, the court held it was "apparent from the record" that Boge had "[s]ufficient reason for his failure to assert grounds for relief previously."

---

[6] We recognize a difference in the procedural posture of that case. The supreme court had dismissed Boge's direct appeal as frivolous under then court rule 16 (later Iowa Rule of Appellate Procedure 104 and now unavailable under rule 6.1005). *Boge*, 252 N.W.2d at 413. The court held that such a dismissal was not a final adjudication of Boge's postconviction attack on his guilty plea. *Id.*

Like Boge, Beaulieu had sufficient reason for his failure to challenge the voluntariness of his guilty pleas in a direct appeal. Beaulieu offered evidence at the PCR hearing that he experienced a serious health emergency during his plea hearing. He testified that he felt compelled to plead guilty so that he could receive medical treatment as quickly as possible. Evidenced by his medical records, Beaulieu was, in fact, suffering from a life-threatening condition. And his recovery stretched into the ten-day appeal period.

Yet the State contends because Beaulieu waived the right to counsel, he cannot now complain about the lack of assistance in filing an appeal. That contention overlooks whether his waiver of counsel was knowing, voluntary, and intelligent. *See Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004) (explaining waiver of the right to plea counsel requires defendant do so knowingly and intelligently with sufficient awareness of the relevant circumstances). Logically, doubts about Beaulieu's capacity to plead guilty also apply to his capacity to waive his right to an attorney. Under these facts, not only did Beaulieu lack effective assistance of counsel in challenging the voluntariness of his pleas, he lacked any assistance of counsel.[7]

---

[7] Beaulieu's situation differs from *Earnest v. State*, where a PCR applicant argued that he had sufficient cause for failing to file a direct appeal because he did not know the "details and consequences" of his guilty plea. 508 N.W.2d 630, 631 (Iowa 1993). In declining to reach the merits of Earnest's claim, the court held that he was "fully informed and cognizant of the terms of his plea agreement." *Id.* The plea and sentencing hearings revealed Earnest's many discussions with his counsel and the court about his understanding of the plea terms. *Id.* at 632. By contrast, here we have no record of the plea and sentencing hearing beyond the form orders.

Having addressed the self-representation issue, we turn to the other fact that sets this case apart—Beaulieu's convictions were for simple misdemeanors. So he had just ten days to appeal. *See* Iowa R. Crim. P. 2.73(1). After Beaulieu's release from the hospital, he had one week to perfect his appeal. According to the discharge report, he continued to experience chest pain and nausea from pain medication. As a result, he was anxious about returning home. We find these ongoing health concerns, along with his lack of legal representation, provided sufficient reason for not timely appealing.

On top of the short turnaround time for an appeal, we consider the different array of judicial resources in simple misdemeanor cases. District courts or district associate courts, rather than the appellate courts, hear simple misdemeanor appeals. Iowa R. Crim. P. 2.73(3). If Beaulieu had timely appealed to the district court, that court would have had the option to order the presentation of further evidence if necessary to establish that his guilty pleas were involuntary. *See id.* As a practical matter, that process would have matched the PCR proceeding that occurred. The district court could have reached the merits of Beaulieu's claims without contravening the overall aim of section 822.8. *See Carstens v. Rans*, 210 N.W.2d 663, 664 (Iowa 1973) ("[O]ur postconviction relief act is ordinarily not available to correct errors which should have been (but were not) raised at some previous stage of the proceedings.").

Having determined that Beaulieu offered sufficient reason for not raising his claim on direct appeal, we turn to the question of prejudice. Did the dismissal of his PCR action, without a decision on the merits, work to "his actual and substantial

disadvantage?" *Polly v. State*, 355 N.W.2d 849, 855 (Iowa 1984). The answer is "yes."

If the district court had decided that Beaulieu's evidence constituted sufficient cause for not filing an appeal, then it would have heard his claim on the merits. By not properly weighing Beaulieu's testimony and the medical records, the district court substantially disadvantaged Beaulieu. Had the court reached the merits, there is a reasonable chance that the outcome would have been different.

We take no position on whether Beaulieu knowingly, voluntarily, and intelligently entered his guilty pleas. The district court is in a better position to gauge the credibility of his claims. Thus, we reverse the dismissal and remand for the district court to decide, on the existing record, whether Beaulieu's guilty pleas were knowing, voluntary and intelligent.

**REVERSED AND REMANDED WITH DIRECTIONS.**