# IN THE COURT OF APPEALS OF IOWA

No. 18-1586
Filed September 11, 2019

**CARL JULIUS BENNETT,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.

     Carl Bennett appeals the denial of his application for postconviction relief.

**AFFIRMED.**

     Kevin Hobbs, West Des Moines, for appellant.

     Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant

Attorney General, for appellee State.

     Considered by Potterfield, P.J., and Tabor and Greer, JJ.

**GREER, Judge.**

Carl Bennett appeals the denial of his application for postconviction relief (PCR), arguing he is innocent and that his trial counsel was ineffective. After reviewing the record, we agree with the district court that there is overwhelming evidence of Bennett's guilt and that he did not prove his attorney was ineffective. We affirm.

## I. Background Facts and Proceedings.

A series of Carl Bennett's bad decisions brings us to this appeal. On May 8, 2015, Bennett's friend and neighbor, T.B., gave him a ride home from work. During the ride, Bennett allegedly became angry at T.B., punched her in the face, and told her he was going to steal her 2006 Saturn Vue. When they arrived at their apartment complex, Bennett told T.B. to exit the vehicle. T.B. complied, and Bennett drove off with the vehicle.

The next day, Bennett allegedly began driving the Vue back and forth in the apartment complex parking lot while taunting T.B. over the phone. Candidly, he admits he intentionally rammed the Vue into a 1998 Honda Prelude in the lot, damaging both vehicles. Likewise, T.B. and three other residents of the apartment complex watched Bennett ram the Prelude. To avoid the consequences of his behavior, Bennett hid in the closet of the apartment building where he was staying with his girlfriend, K.A. Police arrived shortly after and found Bennett. During the struggle with the officers, and at Bennett's request, K.A. recorded part of the interaction on her cell phone. At the direction of the officers, she provided this video to police. In the end, the officers secured and arrested Bennett.

The State charged Bennett with five counts arising out of the events on May 8 and 9.[1] These charges carried a maximum sentence of twenty years in prison and a mandatory minimum of seven years.

While the first criminal case was pending, Bennett experienced yet another encounter with law enforcement. On November 5, police responded to a shots-fired call. Officers observed Bennett nearby and tried to speak with him. Ignoring their questions and directives, Bennett remained on his cell phone. As one officer reached for Bennett's phone, a struggle ensued. In the fray, Bennett struck an officer twice with a closed fist. As he threatened and kicked at other officers, they physically restrained him. Afterward, Bennett began complaining about injuries, and the officers called medics to respond. While waiting for the medics, Bennett tried to bite and kick the officers and made numerous threats. When medics sought to treat him, Bennett kicked one of the medics, spat on an officer in the ambulance, and threatened to kill other officers. One officer suffered a broken finger during this incident.

The State charged Bennett with seven counts following the November 5 incident.[2] These charges carried a maximum sentence of seventeen years in prison.

---

[1] The charges in the May incident were: robbery in the second degree in violation of Iowa Code sections 711.1 and 711.3 (2015); assault causing bodily injury in violation of Iowa Code sections 708.1 and 708.2(2); criminal mischief in the second degree in violation of Iowa Code sections 716.1 and 716.4; assault on a police officer causing injury in violation of Iowa Code sections 708.1 and 708.3A(3); and interference with official acts in violation of Iowa Code section 719.1.

[2] The charges in the November incident were: two counts of assault on a police officer with intent to inflict serious injury in violation of Iowa Code sections 708.1 and 708.3A(1); two counts of assault on a health care provider in violation of Iowa Code sections 708.1 and 708.3A(4); one count of assault on a police officer in violation of Iowa Code sections

With both criminal cases pending, Bennett accepted a plea agreement in February 2016. As for the May incident, Bennett pleaded guilty to one count of operating a motor vehicle without owner's consent, assault causing bodily injury, criminal mischief in the second degree, and assault on a police officer causing injury. To resolve the November incident, Bennett pleaded guilty to two counts of assault on a police officer with intent to inflict serious injury and two counts of assault on a health care provider.

During the plea colloquy, the court reviewed: (1) each count of the plea agreement, (2) the factual basis for each act, (3) the rights Bennett waived by pleading, (4) Bennett's satisfaction with his attorney, and (5) extensive details about Bennett's mental health. In response to the court's inquiry, Bennett confirmed his understanding of these matters and described his actions related to each charge. Accordingly, the court accepted the guilty plea, and because Bennett waived the presentence investigation report and his right to file a motion in arrest of judgment, sentencing followed. As a result, the court sentenced Bennett to a total term not to exceed fifteen years in prison.

On December 14, Bennett applied for PCR, amended by his appointed postconviction counsel. In the PCR hearing, Bennett raised several complaints, not all set out in the amended application. After considering all claimed issues, the district court denied the application. Bennett appeals.

---

708.1 and 708.3A(4); and one count of harassment in the first degree in violation of Iowa Code sections 708.7(1) and 708.7(2).

**II.  Standard of Review.**

We review freestanding actual innocence claims under the Iowa Constitution de novo.  *Schmidt v. State*, 909 N.W.2d 778, 797–98 (Iowa 2018); *State v. Shultsev*, No. 17-1766, 2018 WL 4923139, at *1 n.1 (Iowa Ct. App. Oct. 10, 2018) (noting de novo standard of review).  We review claims of ineffective assistance of counsel de novo.  *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009).

**III.  Analysis.**

In this postconviction action, Bennett argues that he is innocent of the crimes to which he pleaded guilty and that his counsel was ineffective.  With those issues in mind, we consider this record.

**A.  Actual Innocence**:  A defendant may challenge a criminal conviction despite a guilty plea when they claim they were innocent of the crime.  *Schmidt*, 909 N.W.2d at 795–96 (addressing plea to going armed with a dangerous weapon challenged because of newly discovered witness testimony about justification defense).  To succeed on an actual innocence claim, an "applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including the newly discovered evidence."  *Id.* at 797.  Clear and convincing evidence of innocence exists when the evidence shows no serious or substantial doubt as to the innocence of the accused.  *See State v. Huss*, 666 N.W.2d 152, 160 (Iowa 2003) (discussing clear and convincing standard).

To begin, Bennett maintains his innocence as to all charges that were part of his voluntary guilty plea except for the criminal mischief charge.  According to

Bennett, someone else assaulted T.B. at a party on May 8 and Bennett drove her home because she was intoxicated. Bennett also claims M.F. picked him up from work on May 8, not T.B. To prove his innocence, he claims a woman[3] could have testified that he did not assault T.B.

As for other evidence of innocence, Bennett also argues that his attorney failed to interview two key witnesses, K.A. and L.J. Bennett points to K.A.'s recorded interaction between himself and the police officers inside the apartment on May 9. He believes this video would show he did not fight the officers. With the claimed testimony from L.J., Bennett offers "proof" that during his November 5 conversation with L.J., she knew he had a splint on his left hand and she heard him telling the officers about his mental-health issues.

Yet Bennett did not call any of these witnesses to testify under oath at the PCR hearing nor did he submit affidavits or other evidence to corroborate his claims. Likewise, K.A. turned the video over to the police, and Bennett's trial counsel acknowledged it was not helpful to the case. Nor does Bennett indicate how L.J.'s testimony would have trumped the eyewitness testimony of the officers and medics involved in the second incident.

In all, Bennett's self-serving hearsay statements fail to establish his innocence by clear and convincing evidence. *See Kirchner v. State*, 756 N.W.2d 202, 206 (Iowa 2008) (concluding that the applicant's self-serving statements, unsupported by evidence, were inadequate to establish his PCR claims). Moreover, Bennett's trial counsel testified that Bennett never claimed his

---

[3] Bennett could only identify this witness by a first name.

innocence and did not want to go to trial. This testimony matches a letter Bennett sent to the trial court stating in part that he was willing to take "full responsibility" for his actions.

Bennett's self-serving statements also conflict with his admissions during the plea colloquy. Bennett admitted that during the May incident he (1) took the victim's car without her permission, (2) hit the victim causing bruises, (3) drove her car into another car causing damage, and (4) pushed an officer into the wall during his arrest and injured another officer who fell. As to the November incident, Bennett admitted he (1) punched and kicked police officers intending to injure them and (2) assaulted health care providers by spitting on them. Likewise, Bennett confirmed that he understood the plea agreement, wanted to proceed, and accepted he gave up his right to call witnesses at a trial.

In the end, Bennett failed to show by clear and convincing evidence that no factfinder could convict him of the crimes involved, despite the State's evidence of guilt. We agree with the district court's confirmation that "Bennett has wholly failed to meet this rigorous [clear and convincing] standard."

**B. Ineffective Assistance of Counsel.** We begin analyzing ineffective-assistance-of-counsel claims with the strong presumption that counsel's performance meets professional standards. *State v. Oetken*, 613 N.W.2d 679, 683 (Iowa 2000). To prevail on a claim of ineffective assistance, a claimant must show by a preponderance of the evidence (1) that counsel failed to perform an essential duty and (2) that prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To establish the first prong, the claimant must show that counsel's performance was

unreasonable under prevailing professional norms given all the circumstances. *Linn v. State*, 929 N.W.2d 717, 730 (Iowa 2019).

To establish prejudice, the claimant must prove there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's unprofessional errors. *Id.* at 731. The claimant must show that the probability of a different result is "sufficient to undermine confidence in the outcome." *Bowman v. State*, 710 N.W.2d 200, 206 (Iowa 2006) (quoting *State v. Graves*, 668 N.W.2d 860, 882 (Iowa 2003)). We will consider what factual findings counsel's errors affected and whether the effect was pervasive or isolated and trivial. *Graves*, 668 N.W.2d at 882–83.

As the United States Supreme Court stated,

The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, 466 U.S. at 697.

Bennett claims his trial counsel was ineffective by failing to (1) investigate witnesses favorable to his defenses and otherwise do pretrial discovery, (2) move to reduce his bond, (3) address his competency for trial, and (4) regularly meet with him and properly explain the plea agreement.

1. *Failure to investigate.* During the PCR hearing, trial counsel outlined overwhelming evidence mitigating against a jury trial, including Bennett's guilty behavior of hiding from the authorities. Independent eyewitnesses to the May incident corroborated the State's theory, and a video captured Bennett's assault

on the arresting officers. As to the November 5 incident, the officers and medics were eyewitnesses to—and victims of—Bennett's assaults. The notes from trial counsel's client conferences do suggest Bennett offered names of witnesses with factual versions conflicting with the trial information. Yet at the PCR hearing, Bennett failed to prove that these witnesses would actually testify as he claimed or present evidence corroborating these hearsay statements. *See Sims v. State*, 295 N.W.2d 420, 423 (Iowa 1980) (noting that a PCR applicant failed to demonstrate how proffered testimony of witness would have effected trial outcome). Thus, Bennett cannot show prejudice based on trial counsel's lack of investigation.

2. *Failure to move to reduce bond.* Bennett bonded out after the May incident. Of course, he wanted the same result after the November incident. Given Bennett's long history of assaultive behavior,[4] as well as a new allegation of assaulting law enforcement, Bennett's expectation of success at a second bond hearing was a fantasy. *See State v. Kellogg*, 534 N.W.2d 431, 434 (Iowa 1995) (stating courts may consider "whether the defendant would pose a danger to others or to the community if released" when setting conditions for release on bond). Bennett cannot show prejudice on his counsel's failure to seek a bond reduction.

3. *Failure to address his competency.* Bennett testified he has schizoaffective disorder, bipolar disorder, depression, anxiety, and borderline personality traits. After his arrest for the first offenses, Bennett wrote the presiding judge to request leniency, discussed his hallucinations and propensity to hear

---

[4] Bennett's criminal history includes convictions of eleven assault charges, seven of which involved police officers, one charge of operating without owner's consent, one theft charge, and six criminal mischief charges.

voices, and suggested probation for the crimes.

To assure Bennett's competence, his trial counsel reviewed Bennett's mental-health records from various providers, included the mental-health advocate in client meetings, and confirmed Bennett understood the terms of the plea. At the plea hearing, Bennett and his counsel recited Bennett's underlying mental-health history to the court. In particular, the district court carefully outlined and discussed Bennett's ability to understand the court, the charges imposed, and the possibility of available defenses besides a general denial. Because Bennett addressed each topic with verbal responses, the district court properly assessed Bennett's competency, demeanor, and understanding of the proceedings. As with the other claims of ineffectiveness, Bennett has failed to show prejudice.

4. *Failure to communicate and explain plea agreement.* From the beginning of the representation, trial counsel confirmed that Bennett urged a plea deal and no trial. That strategy appears in the letter Bennett sent to the presiding judge. Given the potential charges and maximum sentence, Bennett's criminal history, and the violent nature of the charges, taking a plea agreement was a rational and reasonable decision. *See Cole v. State*, No. 15-0344, 2016 WL 7395722, at *3 (Iowa Ct. App. Dec. 21, 2016) (finding no prejudice where there was "little evidence [the defendant] would have rejected the plea agreement," the State's case against the defendant appeared strong, and the defendant had "received substantial concessions in exchange for his guilty plea").

That said, Bennett complains now he did not understand the difference between consecutive and concurrent sentencing when entering his plea. Evidence at the PCR proceeding suggests that trial counsel conferenced before the plea and

sentencing proceedings with Bennett and others to address the plea conditions. Similarly, Bennett and the trial court discussed the terms of the agreement, and Bennett's criminal history suggests he had experience with the application of those concepts in earlier unrelated plea deals. Finally, the court emphasized Bennett's right to confer with counsel at any step of the proceedings, but he never requested a conference. Instead, Bennett confirmed his understanding and answered a series of questions about each charge. Nothing in this record supports the notion that trial counsel's representation falls short of the professional norms or that there was any prejudice to Bennett.

## IV. Conclusion.

For all of the above stated reasons, we affirm the district court's denial of Bennett's application for postconviction relief.

**AFFIRMED.**